IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ALEX HUDSON,  )
on behalf of himself and all others  )
similarly situated,  )
    )
    Plaintiff,  )
    )
v.  )  1:23CV486(WO)(JEP)
    )
PALM BEACH TAN, INC.,  )
    )
    Defendant.  )

### ORDER AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendant's Motion to Dismiss [Doc. #16] for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

As relates to Defendant's Motion to Dismiss, the allegations in the Complaint are straightforward. According to the Complaint, Plaintiff uses his cell phone as a residential telephone. (Compl. [Doc. #14] ¶¶ 13-16.)[1] Despite placing his cell phone number on the national Do-Not-Call registry, Plaintiff received repeated text-message solicitations from Defendant on behalf of Defendant's tanning salon business. (Compl. ¶¶ 1-3, 9, 14, 17-18, 25.) Defendant continued sending text messages to Plaintiff's cell phone despite Plaintiff's repeated objections and requests that Defendant stop. (Compl. ¶¶ 1-3, 19-23.) Plaintiff alleges

---

[1] Citations to "Compl." or references to the Complaint refer to the Amended Complaint [Doc. #14], the operative complaint for Defendant's Motion to Dismiss.

that he suffered damages from these text messages under the federal Telephone Consumer Protection Act (hereinafter "TCPA"). (Compl. ¶ 26.)

As a result, Plaintiff brought this lawsuit seeking damages and seeking to certify a class of similarly-situated plaintiffs. Defendant now moves to dismiss on the ground that Plaintiff's claims that he received text messages to his cell phone are not actionable under the TCPA.

For the reasons that follow, the Court will recommend that Defendant's Motion to Dismiss be denied at this time, without prejudice to further consideration of the issues on subsequent dispositive motions.

I. LEGAL STANDARD

Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiff has failed to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 500 U.S. 544, 570 (2007)). This standard does not require "detailed factual allegations," but it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. A claim is facially plausible when the plaintiff provides enough factual content to enable the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. In this way, Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 500 U.S.

at 555, 570; see Iqbal, 556 U.S. at 680. The Court must accept as true all of the factual allegations contained in a complaint, but is not bound to accept legal conclusions. Iqbal, 556 U.S. at 678; Langford v. Joyner, 62 F.4th 122, 124 (4th Cir. 2023). Thus, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

II. DISCUSSION

As is relevant to the Complaint and the issues raised by Defendant in its Motion to Dismiss, Congress by statute and the FCC by regulation have prohibited two related but distinct telemarketing practices: (1) making telephone solicitations to residential telephone subscribers who have indicated that they do not wish to receive such solicitations by placing their telephone numbers in a national Do-Not-Call registry and (2) making telephone solicitations to residential telephone subscribers who have indicated that they do not wish to receive such solicitations by directly requesting the telemarketer to no longer send the solicitations.

"Congress enacted the Telephone Consumer Protection Act (TCPA) to prevent abusive telephone marketing practices." Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 648 (4th Cir. 2019). As one part of this effort, "the TCPA prohibits calls to numbers on the national Do-Not-Call registry." Id.; see also 47 U.S.C. § 227(c)(1)-(4) (in order "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object," the TCPA directed the FCC to formulate regulations that eventually resulted in, among other things, the national Do-Not-Call registry).

> Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means

what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number.

Krakauer, 925 F.3d at 649.

The TCPA grants a private right of action to any person who receives "more than one telephone call within any 12-month period by or on behalf of the same entity" in violation of the FCC's regulations. 47 U.S.C. § 227(c)(5). These regulations, in turn, prohibit any person or entity from initiating "any telephone solicitation" to a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). A telephone solicitation "means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4); accord 47 C.F.R. § 64.1200(f)(15).

These regulations also require "sellers and telemarketers to maintain an internal do-not-call list ('IDNC list'), that is, a list of persons who request not to receive telemarketing calls made by or on behalf of that seller." Krakauer v. Dish Network L.L.C., 311 F.R.D. 384, 387 (M.D.N.C. 2015) (internal quotation marks and brackets omitted) (quoting 47 C.F.R. § 64.1200(d)), aff'd, 925 F.3d 643 (4th Cir. 2019).

> No person or entity shall initiate . . . any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity. . . .
>
> . . . .

4

> Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed 30 days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request.

47 C.F.R. § 64.1200(d)(3).

Under the FCC's regulations, both 47 C.F.R. § 64.1200(c), related to the national Do-Not-Call registry, and § 64.1200(d)(3), related to internal do-not-call lists, "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers." 47 C.F.R. 64.1200(e).[2]

Based on the language of the TCPA and the FCC's related regulations, Defendant seeks dismissal largely on three grounds: (1) the subsection of the TCPA allowing for the private right of action asserted here applies to residential telephones only, which excludes cellular telephones like the one on which Plaintiff allegedly received messages; (2) that same subsection of the TCPA applies to voice calls only, which excludes text messages like the ones Plaintiff allegedly received; and (3) the TCPA and regulations related to internal do-not-call lists do not grant a private right of action. The Court will address these arguments in turn.

### A. Subsection 227(c) of the TCPA and Cell Phones

Defendant first contends that cell phone owners cannot be considered "residential telephone subscribers," and in support of this contention Defendant cites to a handful of district court opinions that note a split of authority on this issue, particularly Gaker v. Q3M

---

[2] As will be discussed below, effective March 26, 2024, the FCC amended subsection (e). Unless otherwise indicated, the version of the regulations quoted in this opinion is that which was in effect at the time of the conduct in this case from 2022 to 2023.

Ins. Sols., No. 3:22-CV-00296-RJC-DSC, 2023 WL 2472649, at *2 (W.D.N.C. Feb. 8, 2023) (recommendation of dismissal, but without a final determination due to settlement). However, the Court concludes that dismissal is not warranted at this time on this issue for three reasons.

First, the vast majority of recent cases that have considered this issue, in this Circuit and others, have found that a cell phone may plausibly be alleged in a complaint to be residential, and thus covered by the TCPA. Compare Tessu v. AdaptHealth, LLC, No. SAG-23-0364, 2023 WL 5337121, at *3, *5 (D. Md. Aug. 17, 2023) ("This Court therefore joins the majority of courts throughout the country who have held that cell phones like Tessu's are entitled to the TCPA's protection as residential telephones."), Nickson v. Advanced Mktg. & Processing, Inc., No. DLB 22-2203, 2023 WL 4932879, at *1, *6 n.6 (D. Md. Aug. 2, 2023) (assuming, without deciding, that a cell phone was residential for purposes of motion to dismiss in TCPA case), Davis v. Reliance First Cap., LLC, No. 7:22-CV-00018, 2023 WL 1982354, at *4 n.1 (E.D.N.C. Feb. 13, 2023) (allegation that a plaintiff was the user of a residential cellular telephone number was sufficient to survive a motion to dismiss under the TCPA), Boardman v. Green Dot Corp., No. 3:21-CV-00174-FDW-DSC, 2021 WL 3699856, at *1, *3 (W.D.N.C. Aug. 19, 2021) (denying motion to dismiss and finding that "a cellphone may plausibly be alleged as residential"), and Fischman v. MediaStratX, LLC, No. 2:20-CV-83-D, 2021 WL 3559639, at *1, *4, *6-7 (E.D.N.C. Aug. 10, 2021) (denying a defendant's motion for judgment on the pleadings in TCPA case involving a cell phone on the Do-Not-Call registry), with Gaker, 2023 WL 2472649, at *2 (finding TCPA did not apply to cell phones), and Morgan v. U.S. Xpress, Inc., No. 3:17-cv-00085, 2018 WL 3580775, at *1 (W.D. Va. July 25, 2018) (holding that for purposes of § 227(b)(1) regarding automated and

6

prerecorded calls, "the structure and language of the TCPA demonstrate that calls made to a cell phone are not calls made to a 'residential telephone line'"). See also Chennette v. Porch.com, Inc., 50 F.4th 1217, 1225 (9th Cir. 2022) ("The complaint alleges that some of the plaintiffs have placed their 'residential' cell phone numbers on the national do-not-call registry. At the motion to dismiss stage and based on the particular allegations in the plaintiffs' complaint, plaintiffs' phones are presumptively residential for purposes of § 227(c)."); Tsolumba v. SelectQuote Ins. Servs., No. 5:22-cv-00712, 2023 WL 6146644, at *3-5 (N.D. Ohio Sept. 20, 2023) (finding that the plaintiff, who placed her cell phone number in the Do-Not-Call registry, sufficiently alleged that she was a residential telephone subscriber under the TCPA); Pariseau v. Built USA, LLC, 619 F. Supp. 3d 1203, 1206-07 (M.D. Fla. 2022) (allegations that plaintiff received text messages to his cell phone despite being on do-not-call registry stated claim under the TCPA); Barton v. Temescal Wellness, LLC, 525 F. Supp. 3d 195, 201-02 (D. Mass. 2021) ("Because Barton has pled that her cell phone number is registered on the Do Not Call Registry and the Do Not Call Registry is only open to residential subscribers and keeping in mind that at the motion to dismiss stage all reasonable inferences are to be made in her favor, I find that Barton has sufficiently pled that she is a residential subscriber for the purposes of her mobile phone number to survive the Rule 12(b)(6) motion."); Hand v. Beach Ent. KC, LLC, 456 F. Supp. 3d 1099, 1120 (W.D. Mo. 2020) ("A cell phone user can qualify as a residential telephone subscriber under 47 C.F.R. § 64.1200(c) and (d).").

Second, in Krakauer v. Dish Network, LLC, a prior TCPA class action in this district that proceeded to final judgment following a jury trial, the certified class included "[a]ll persons

7

throughout the United States whose telephone numbers were listed on the federal Do Not Call registry for at least 30 days," and still received telemarketing calls from the Defendant's agent during the specified time frame. Plaintiff's Motion for Class Certification at 1, Krakauer, 311 F.R.D. 384 (No. 1:14-CV-333), ECF No. 47. This included both landline and cellular telephone numbers, and in certifying the class the District Judge noted that Plaintiff would have to prove that the numbers were used for residential purposes, and that it was an issue of fact for trial as to whether the wireless calls were to a residential number. Memorandum Opinion and Order at 24, Krakauer, 311 F.R.D. 384 (No. 1:14-CV-333) (Eagles, C.J.), ECF No. 111. Notably, the jury instructions then specifically provided that:

> This section of the TCPA does not prohibit calls to business or government numbers, only to residential numbers on the Registry. In determining whether a number is a residential number, you should consider the ordinary English meaning of that phrase. For example, if the number is for a landline associated with a home, whether a house, an apartment, a condominium, or any other kind of dwelling place, <u>or if it is [a] cell phone primarily used for personal calls, similar to the use of a residential landline</u>, then it would be a residential number.

Final Jury Instructions at 11, Krakauer, 311 F.R.D. 384 (No. 1:14-CV-333) (Eagles, C.J.) (emphasis added), ECF No. 293. That class and the ultimate judgment were affirmed by the Fourth Circuit on appeal. Krakauer, 925 F.3d 643. Defendant has not pointed to any basis to reject that interpretation or create a split of authority within the district at this stage of the case.[3]

Third, this approach is consistent with the applicable regulatory provisions and FCC interpretation. In this regard, the statutory language of 47 U.S.C. § 227 does not explicitly

---

[3] Defendant does not challenge that Plaintiff has adequately pleaded use of his cell phone in a residential manner, but rather contends that a cell phone categorically cannot be a residential telephone under the statute. (See Def.'s Br. [Doc. #17] at 5, 10-12; Def.'s Reply Br. [Doc. #19] at 1, 3-7.)

8

preclude a cell phone from being considered a "residential telephone." See Cacho v. McCarthy & Kelly LLP, No. 23-cv-11157 (LJL), 2024 WL 3293628, at *5-9 (S.D.N.Y. July 3, 2024) (undertaking extensive analysis of the statutory text). Further, the private right of action created under 47 U.S.C. § 227(c)(5) of the TCPA is premised on a "violation of the regulations prescribed under this subsection." As relevant here, subsections (c)(2) and (d) of those regulations prohibit an entity from calling a person on the national Do-Not-Call registry or on the entity's internal do-not-call list, respectively. Those same regulations also unambiguously state that the rules set forth in these subsections "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02–278, FCC 03–153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'" 47 C.F.R. § 64.1200(e). These Rules and Regulations make clear that:

> [I]t is well-established that wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phones. Indeed, . . . there is a growing number of consumers who no longer maintain wireline phone service, and rely only on their wireless telephone service. . . .
>
> . . . [I]t is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections. As indicated above, Congress afforded wireless subscribers particular protections in the context of autodialers and prerecorded calls. In addition, although Congress expressed concern with residential privacy, it also was concerned with the nuisance, expense and burden that telephone solicitations place on consumers. Therefore, we conclude that wireless subscribers may participate in the national do-not-call list.

In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14038-39 (2003) (internal footnotes omitted); accord Chennette, 50 F.4th at 1223; Hand, 456 F. Supp. 3d at 1119-20. Thus, the FCC's relevant regulations—and the TCPA

itself, which directly references those regulations as the basis for liability—make clear that they apply to any "entity making telephone solicitations or telemarketing calls to wireless telephone numbers." 47 C.F.R. § 64.1200(e).[4]

---

[4] Notably, under the Administrative Orders Review Act (Hobbs Act), the federal courts of appeals have "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" certain "final orders of the Federal Communication Commission." 28 U.S.C. § 2342(1); PDR Network, LLC v. Carlton & Harris Chiropractic, Inc., 588 U.S. 1, 6-8 (2019), on remand, Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC, 982 F.3d 258 (4th Cir. 2020). As explained in Tessu, 2023 WL 5337121, at *4-5:

> [T]he 2003 FCC Order and the process used to enact it suggest that the rules contained therein, including the pertinent rule at § 64.1200(e), are legislative. The 2003 FCC Order itself specifies that its purpose is to "adopt new rules to provide consumers with several options for avoiding unwanted telephone solicitations" and notes Congress's enactment of "the Do-Not-Call Implementation Act (Do-Not-Call Act), authorizing the establishment of a national do-not-call registry, and directing this Commission to issue final rules." 2003 FCC Order, 18 F.C.C. Rcd. at 14017. In other words, the FCC intentionally elucidated and expanded the TCPA's regulations at Congress's behest. The FCC published the new rules in the Code of Federal Regulations, at 47 C.F.R. §§ 64.1200(d) and 64.1200(e). The FCC also "explicitly invoked its general legislative authority" when enacting the 2003 FCC Order, stating multiple times that it was acting based on Congress's directives and mandate. 2003 FCC Order, 18 F.C.C. Rcd. at 14027, 14033. And the FCC used its formal notice and comment process to enact the rules, seeking comment on the establishment of a national do-not-call list. Id. at 14026. This Court therefore finds that the 2003 FCC Order and its relevant contents are legislative, not interpretive. . . .
>
> . . . The Hobbs Act's exclusive-review provision allows challenges to FCC final orders to be brought in a court of appeals "within 60 days after" the entry of the order in question, 28 U.S.C. § 2344. In other words, [defendant] had an opportunity to seek judicial review not at the time of the proposed rulemaking, but once the 2003 FCC Order had been issued and [defendant] could see what it said. The limitation on this Court's jurisdiction by the Hobbs Act makes practical sense. Permitting private parties to indefinitely challenge FCC rulings that have the force and effect of law would undermine the established expectations of regulated parties and cause substantial uncertainty. The Hobbs Act "procedural path created by the command of Congress 'promotes judicial efficiency, vests an appellate panel rather than a single district judge with the power of agency review, and allows uniform, nationwide interpretation of the federal statute by the centralized expert agency created by Congress to enforce the TCPA.'" Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110, 1119 (11th Cir. 2014) (quoting CE Design, Ltd. v. Prism Bus. Media, Inc., 606 F.3d 443, 450 (7th Cir. 2010)). "To hold otherwise merely because the issue has arisen in private litigation would permit an end-run around the administrative review mandated by the Hobbs Act. Such an end run could result in a judicial determination of a regulation's invalidity without participation by the agency and upon a record not developed by the agency." Nack v. Walburg, 715 F.3d 680, 686 (8th Cir. 2013).
>
> Given the Hobbs Act's provisions, this Court lacks jurisdiction to review the 2003 FCC Order. This Court therefore joins the majority of courts throughout the country who have held that cell phones like [plaintiff's] are entitled to the TCPA's protection as residential telephones.

As a result, this Court would lack jurisdiction to consider any challenge to an FCC legislative rule. Defendant has not addressed the application of the Hobbs Act, even though Defendant is seeking to challenge this FCC

The handful of cases cited by Defendant reaching a contrary result do not provide a sufficient basis to reject the weight of authority, the prior decision of this Court in Krakauer, and the analysis of the FCC as reflected in the applicable regulations, to conclude that a cell phone can never be a residential telephone, as Defendant contends.[5] Therefore, Defendant's Motion to Dismiss on the basis that a cell phone cannot be a residential telephone should be denied.

---

regulatory provision. In addition, to the extent that Defendant may be contending that this is simply an interpretive rule not precluded by the Hobbs Act, Defendant has not explained that analysis or further addressed review under Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944). Finally, the Court notes that after the briefing was completed on the present Motion to Dismiss, the Supreme Court issued its decision in Loper Bright Enterprises v. Raimondo, 144 S. Ct. 2244 (2024). It is not clear that the decision in Loper Bright would affect any of the analysis here. However, it would be more efficient and appropriate to further consider any such issues after an opportunity for the Parties to address and fully brief them. Therefore, the Court recommends that the Motion to Dismiss be denied without prejudice to further consideration of these issues, if appropriate, on future dispositive motions.

[5] With respect to the statutory language, Defendant argues that because the statute uses the term "residential telephone" in subsection (b)(1)(B) of the statute and "cellular telephone" in subsection (b)(1)(A)(iii), there is a preclusive distinction between the two that necessarily means a cellular or wireless telephone is not, and cannot be, a residential telephone. (See Def.'s Br. at 11-12; Def.'s Reply Br. at 4-5.) However, it does not appear that the listing in (b)(1)(A)(iii) of certain telephonic services either mandates or precludes them from being residential or commercial, as the case may be. If, for example, the TCPA's listing of "cellular telephone" in subsection (b)(1)(A)(iii) and "residential telephone" in subsection (b)(1)(B), meant that a residential telephone could never be a cellular telephone—or vice versa—then neither could a residential telephone ever be a "service for which the called party is charged for the call"—another type of service listed in subsection (b)(1)(A)(iii) but not (b)(1)(B). The Fourth Circuit has already rejected such a conclusion. Lynn v. Monarch Recovery Mgmt., Inc., 586 F. App'x 103, 103-04 (4th Cir. 2014) ("We conclude that the call-charged provision's plain language encompasses [defendant]'s calls to [plaintiff's home phone]."). If "any service for which the called party is charged for the call" may statutorily include residential telephones, given the facts of a particular case, then it appears that the same is true for a "cellular telephone service" which is included in the very same clause of the statute. See 47 U.S.C. § 227(b)(1)(A)(iii). Moreover, as noted *supra*, with respect to the provisions of § 227(c), the Hobbs Act would potentially preclude any challenge to an FCC legislative rule, and Defendant would need to address that provision before the Court could consider these issues further.

B.  Subsection 227(c) of the TCPA and Text Messages

Defendant next contends that a text message cannot constitute a "telephone call" under § 227(c)(5) of the TCPA and that Plaintiff's claims must therefore be dismissed. However, this contention should be rejected at this stage of the case for two reasons.

First, the weight of the case law supports the conclusion that the receipt of text messages can establish an injury under § 227(c)(5). See, e.g., Hall v. Smosh Dot Com, Inc., 72 F.4th 983, 986 (9th Cir. 2023) (holding that an owner/subscriber of a phone with a number listed on the Do-Not-Call Registry who receives unsolicited telemarketing texts has standing under § 227(c)); Chennette, 50 F.4th at 1225 ("The complaint alleges that some of the plaintiffs have placed their 'residential' cell phone numbers on the national do-not-call registry [and then received text messages]. At the motion to dismiss stage and based on the particular allegations in the plaintiffs' complaint, plaintiffs' phones are presumptively residential for purposes of § 227(c). We therefore conclude that these plaintiffs have standing to sue under § 227(c)."); Williams v. Myler Disability, LLC, No. 3:20-cv-00275-FDW-DCK, 2020 WL 6693134, at *6 (W.D.N.C. Nov. 12, 2020) ("Reading together other courts' interpretations of the TCPA and extending relevant Fourth Circuit precedent related to receipt of calls under the TCPA, the Court finds Plaintiff's receipt of Defendant's two unsolicited text messages asking Plaintiff to call Defendant to apply for disability benefits are the kind of harm the TCPA protects against."); Pariseau v. Built USA, LLC, 619 F. Supp. 3d 1203, 1207 (M.D. Fla. 2022) ("[S]everal persuasive decisions conclude that Section 227(c)(5) confers a claim on a person receiving more than one voice call or text message."); Hall, 72 F.4th at 986 ("We now hold that the owner and subscriber of a phone with a number listed on the Do-Not-Call Registry has

12

Case 1:23-cv-00486-WO-JEP   Document 20   Filed 08/12/24   Page 12 of 20

suffered an injury in fact when unsolicited telemarketing calls or texts are sent to the number in putative violation of the TCPA." (emphasis added)).

Second, the statutory text and FCC regulations and guidance support the conclusion that text messages can establish the basis for a claim under § 227(c)(5). By its terms, § 227(c) protects residential telephone users' privacy rights "to avoid receiving telephone solicitations to which they object." 47 U.S.C. 227(c)(1). A "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. 227 (a)(4). Thus, "messages" are included in the relevant statutory provisions. See Pepper v. GVG Capital LLC, 677 F. Supp. 3d 638, 643 (S.D. Tex. June 9, 2023) ("GVG Capital also argues that text messages are not actionable under the TCPA provisions at issue. . . . This argument fails in the face of the statutory text, which refers to 'telephone call[s] or message[s],' 47 U.S.C. § 227(c), the applicable regulations, and the decisions of the various courts to consider the issue.")[6]

The FCC has issued regulations and guidance confirming that text messages are included in the TCPA prohibitions and the private right of action in § 227(c)(5). Effective

---

[6] The Court also notes that the Supreme Court has assumed, and other Circuit courts and district courts in this Circuit have held, that the term "call" does include text messages, in interpreting another subsection of the TCPA. In relevant part, subsection (b) of the TCPA restricts the use of automated telephone equipment and makes prohibitions on certain "calls." 47 U.S.C.A. § 227(b). Courts have routinely found that the phrase "call" in subsection (b) of the statute includes text messages. See Facebook, Inc. v. Duguid, 592 U.S. 395, 400 n.2 (2021) (assuming that the TCPA's prohibitions extend to text messages); Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)."); Murphy v. DCI Biologicals Orlando, LLC, 797 F.3d 1302, 1305 (11th Cir. 2015) (subsection (b)'s "prohibition against auto dialed calls applies to text message calls as well as voice calls"). If a text message is a "call" under the statutory language in subsection (b)(1)(A)—which places restrictions on making "any call" using an automatic telephone dialing system to certain lines, without separately specifying that it includes text messages—then there is no reason to assume that a text message could not be a call under subsection (c)(5).

13

March 26, 2024, the FCC amended subsection (e) to confirm that the regulations apply to text messages sent to wireless telephone numbers, and the regulation now provides that:

> The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls **or text messages** to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."

47 C.F.R. § 64.1200(e) (2024) (emphasis added); Targeting and Eliminating Unlawful Text Messages, Implementation of the Telephone Consumer Protection Act of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls, 89 Fed. Reg. 5098, 5101, 5104 (Jan. 26, 2024). In summarizing that amendment, the FCC explained that:

> The Commission adopts the proposal to codify the National DNC Registry's existing protections to text messages. Texters must have the consumer's prior express invitation or permission before sending a marketing text to a wireless number in the DNC Registry. The Commission previously concluded that the national database should allow for the registration of wireless telephone numbers and that such action will further the objections of the TCPA and the Do-Not-Call Act. The Commission's action is consistent with Federal court opinions and will both deter illegal texts and make DNC enforcement easier.

Targeting and Eliminating Unlawful Text Messages, 89 Fed. Reg. at 5099. This is consistent with prior FCC guidance confirming that the TCPA applies to text messages to the same extent as it does voice calls. See In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961 (2015) ("Glide raises the issue of whether SMS text messages are subject to the same consumer protections under the TCPA as voice calls. We reiterate that they are."); see also Reimer v. Kohl's, Inc., No. 23-CV-597-JPS, 2023 WL 6161780, at *4 (E.D. Wis. Sept. 21, 2023) ("Against this backdrop, the Court is constrained to agree with Plaintiff that the Notice is a clarification and not a substantive change to the law. . . . Given

the landscape of the existing case law, it is wholly clear that the Notice seeks to restate what a potentially confusing area of the law is and has always been, not to change it.").

With respect to the FCC guidance, the Court also notes that in a 2003 rules and regulations report, the FCC "affirm[ed] that under the TCPA, it is unlawful to make *any call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number" and that "[t]his encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. at 14115 (citing 47 U.S.C. § 227(b)). The fact that the FCC uses "voice," "text" and "short message service (SMS)" to modify "calls" itself indicates that voice calls, text calls, and SMS calls are all types of calls, and thus, necessarily, calls. See In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. at 14115-16. Subsection 227(c)(5) grants a private right of action to a "person who has received more than one telephone call within any 12-month period." The statute does not specify that it must be a voice call or a live telephone solicitation or a live telemarketing call: it simply applies to telephone calls broadly. Because the FCC recognizes text calls as a type of call, a text message would presumably be a form of a telephone call under § 227(c)(5).

For all of these reasons, the Court recommends that the Motion to Dismiss be denied at this time with respect to Defendant's contention that text messages cannot form the basis for a claim under § 227(c)(5).[7]

---

[7] As previously noted, under the Administrative Orders Review Act (Hobbs Act), the federal courts of appeals have "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" certain "final orders of the Federal Communication Commission." 28 U.S.C. § 2342(1). Defendants have not addressed the application of the Hobbs Act with respect to the FCC guidance and regulations regarding text

Case 1:23-cv-00486-WO-JEP    Document 20    Filed 08/12/24    Page 15 of 20

C.     Private Right of Action for Internal Do-Not-Call List Violations

Finally, Defendant moves for dismissal of any claim premised on 47 C.F.R. § 64.1200(d)(3)—related to internal do-not-call ("IDNC") lists—on the basis that this regulation does not fall under the private right of action created by subsection (c)(5) of the TCPA.

However, the prior litigation in this District in Krakauer supports a finding that the TCPA creates a private right of action under 47 C.F.R. § 64.1200(d)(3). In Krakauer, the Court noted that "[t]he TCPA regulations state that if a person makes a request not to receive calls from a telemarketer, the telemarketer must place that person on its IDNC list and not call that person without consent," and the Court recognized that the statute creates a private right of action for violation of the regulations, citing 47 C.F.R. § 64.1200(d)(3) for the proposition that there was "liability for IDNC list violations." Krakauer, 311 F.R.D. at 389 (internal quotation marks and brackets omitted). The Court therefore certified two proposed classes: one involving individuals on the National Do Not Call list, and another involving individuals on the Defendant's Internal Do Not Call List. Id. at 387. By the time of trial, the parties agreed that the classes were largely overlapping and agreed to dismiss the claims involving the Internal Do Not Call List to simplify the issues for trial. See Second Order Modifying Class Definition at 2-3, Krakauer, 311 F.R.D. 384 (No. 1:14-CV-333), ECF No. 271. In affirming the ultimate

---

messages. In addition, as noted above, the FCC clarified the regulation by amendment in 2024, so the briefing did not address that amendment. Further, the Parties have not addressed the possible application of the recent decision of the Supreme Court in Loper Bright Enterprises v. Raimondo, 144 S. Ct. 2244 (2024). In the circumstances, it would be more efficient and appropriate to further consider these issues after an opportunity for the Parties to address and fully brief them. Therefore, the Court recommends that the Motion to Dismiss be denied without prejudice to further consideration of these issues, if appropriate, on future dispositive motions.

Judgment, the Fourth Circuit noted that "[i]n addition to the national registry, companies are also expected to keep individual Do-Not-Call lists, reflecting persons who have directly told the company that they do not wish to receive further solicitations." Krakauer, 925 F.3d at 649 (citing 47 C.F.R. § 64.1200(d)).  In this context, the Fourth Circuit stated clearly that "[t]he TCPA can be enforced by . . . private citizens," strongly indicating a private right of action under 47 C.F.R. § 64.1200(d).  See id.

In addition, cases from other districts in this Circuit support this conclusion.  See Ford v. NaturaLawn of Am., Inc., No. 24-354 PJM, 2024 WL 3161762, at *6-7 (D. Md. June 25, 2024) ("This Court concurs with . . . the cases that have found a private right to enforce Section 64.1200(d) under subsection (c) of the TCPA.  At bottom, the TCPA permits a telephone consumer to sue a telemarketer if it can be shown that the consumer received more than one solicitation (whether by call or by text) within the preceding 12-month period in violation of the FCC's regulations governing such communications. 47 U.S.C. § 227(c)(5).  As numerous courts have concluded, the regulatory requirement that telemarketers desist from contacting those consumers who have told the telemarketer to 'STOP' contacting them, is rooted in the TCPA's directive to the FCC to promulgate rules, including requiring company-specific do-not-call systems, 'to protect residential telephone subscribers' privacy rights.' 47 U.S.C. § 227(c)(1). . . [Plaintiff] may seek redress by suing [defendant] pursuant to 47 U.S.C. § 227(c)(5)." (internal footnote and citation to record omitted)); Fischman, 2021 WL 3559639, at *6-7 (E.D.N.C. Aug. 10, 2021) ("[T]he court holds that the FCC promulgated the relevant provisions of section 64.1200(d) under 47 U.S.C. § 227(c).  Accordingly, Congress explicitly

17

Case 1:23-cv-00486-WO-JEP    Document 20    Filed 08/12/24    Page 17 of 20

provided a private cause of action for Fischman's second and third claims, and the court denies MediaStratX's motion for a judgment on the pleadings.").

In light of the prior approach in this District in Krakauer—and the related language in the Fourth Circuit's affirmance of that decision and recent cases from elsewhere in this Circuit—there is clear authority for the conclusion that § 64.1200(d) of the FCC's regulations was promulgated under § 227(c) of the TCPA, which grants a private right of action for violation of the FCC's regulations. See also Worsham v. Disc. Power, Inc., No. RDB-20-0008, 2022 WL 3100762, at *2 n.2 (D. Md. Aug. 4, 2022) (noting reconsideration of dismissal "in light of intervening authority recognizing that 47 C.F.R. § 64.1200(d) provides a private right of action"); Mey v. Castle L. Grp., PC, No. 5:19-CV-185, 2022 WL 3108034, at *3 (N.D.W. Va. July 5, 2022) ("With respect to the argument that no private cause of action exists for violations of 47 C.F.R. § 64.1200(d), this Court finds that a private cause of action does in fact exist."), aff'd sub nom. Mey v. Phillips, 71 F.4th 203 (4th Cir. 2023); Boardman, 2021 WL 3699856, at *3 ("[T]he Court finds that Plaintiff has a plausible claim under 47 C.F.R. § 64.1200(d).").

This determination also comports with the decisions from the majority of courts from other Circuits that have considered this issue. See Rosenberg v. LoanDepot.com LLC, 435 F. Supp. 3d 308, 324 (D. Mass. 2020) ("A majority of courts that have addressed the issue (though not all), including the Sixth Circuit, have held that 47 C.F.R. § 64.1200(d)(4) was promulgated under the authority in § 227(c) and, therefore, contains a private right of action."); accord Hossfeld v. DIRECTV, LLC, No. 2:22-cv-05339-JLS-MAA, 2023 WL 3549742, at *4 (C.D. Cal. Mar. 31, 2023); see also, e.g., Murray v. Grocery Delivery E-Servs. USA Inc., 55 F.4th

340, 347 (1st Cir. 2022) (recognizing an IDNC claim under 47 C.F.R. § 64.1200(d) and 47 U.S.C. § 227(c)(5)); Cordoba v. DIRECTV, LLC, 942 F.3d 1259, 1265 (11th Cir. 2019) (same); Charvat v. NMP, LLC, 656 F.3d 440, 449 (6th Cir. 2011) (same); Newman v. Benefytt Techs., Inc., No. 22 C 4845, 2023 WL 5651738, at *3 (N.D. Ill. Aug. 31, 2023) (finding a private right of action under 47 C.F.R. § 64.1200(d)); Hossfeld, 2023 WL 3549742, at *4 (same); Noviello v. Holloway Funding Grp., No. 3:22-CV-52-BN, 2023 WL 128395, at *7 (N.D. Tex. Jan. 9, 2023) (same); Gill v. Align Tech. Inc., No. 21-CV-631-JPS-JPS, 2022 WL 1540016, at *2 (E.D. Wis. May 16, 2022) (same); Callier v. Debt Mediators, LLC, No. EP-21-CV-278-DB, 2022 WL 1423622, at *2-3 (W.D. Tex. May 5, 2022) (same); LaGuardia v. Designer Brands Inc., No. 2:20-cv-2311, 2022 WL 1121382, at *2 (S.D. Ohio Apr. 14, 2022) (same); Robison v. 7PN, LLC, 569 F. Supp. 3d 1175, 1184 (D. Utah 2021) (same); Adam v. CHW Grp., Inc., No. 21-CV-19-LRR, 2021 WL 7285905, at *8 (N.D. Iowa Sept. 9, 2021) (same); Persichetti v. T-Mobile USA, Inc., 479 F. Supp. 3d 1333, 1338-39 (N.D. Ga. 2020) (same); Rosenberg, 435 F. Supp. 3d at 324 (same).

Therefore, Defendant's Motion to Dismiss on the ground that the TCPA does not grant a private right of action for violations of internal do-not-call lists under 47 C.F.R. § 64.1200(d) should be denied.

III. CONCLUSION

IT IS THEREFORE RECOMMENDED that Defendant's Motion to Dismiss [Doc. #16] be DENIED.

IT IS ORDERED that this case is set for an Initial Pretrial Conference on Thursday, September 26, 2024, at 9:30 a.m. in Winston-Salem, North Carolina.

This, the 12th day of August, 2024.

／s／ Joi Elizabeth Peake
Joi Elizabeth Peake
United States Magistrate Judge