# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ALEX HUDSON, on behalf of himself and all others similarly situated, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Civil Action No. 1:23-CV-486 |
| PALM BEACH TAN, INC., | ) ) | |
| *Defendant.* | ) ) ) | |

---

## DEFENDANT PALM BEACH TAN, INC.'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... 2

TABLE OF AUTHORITIES ................................................................................................ 3

I.    SUMMARY OF ARGUMENT ................................................................................... 6

II.   BACKGROUND ............................................................................................................ 7

III.  QUESTIONS PRESENTED ........................................................................................ 7

IV.   LEGAL STANDARD .................................................................................................... 8

V.    ARGUMENT ................................................................................................................. 8

    A.    The plain terms of the TCPA foreclose Plaintiff's claim. ............................ 8

        1.    *Loper Bright* and *Cargill* confirm that statutory text controls. .......... 9

        2.    Plaintiff has no claim under Section 227(c) of the TCPA. ............... 10

        3.    The FCC's extension of the scope of Section 227(c) to cell phones was not authorized by Congress. .......................................... 14

        4.    After *Loper Bright* and *Cargill*, pre-2024 cases about section 227(c) have low value as precedent. ................................................. 17

        5.    The handful of cases about section 227(c) decided since *Loper Bright* and *Cargill* do not address all relevant issues. ...................... 18

        6.    The Hobbs Act does not bar this Court from independently evaluating the authority cited in a lawsuit between private litigants. ........................................................................................... 21

    B.    Even if accorded full weight, the FCC's regulations do not prohibit the text messages Plaintiff alleges in this case. ........................................... 24

VI.   CONCLUSION .......................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ................................................................................ 23

*Barton v. Technical Wellness, LLC*,
    525 F. Supp.3d 195 (D. Mass. 2021) ...................................................... 18

*Boardman v. Green Dot Corp.*,
    No. 3:21-CV-00174-FDW-DSC, 2021 WL 3699856 (W.D. N.C. Aug. 19, 2021) .... 18

*Cacho v. McCarthy & Kelly LLP*,
    2024 WL 3293628 (S.D.N.Y. July 3, 2024) ....................................... 18, 19

*Champion Brick Co. of Baltimore Cnty. v. Signode Corp.*,
    263 F. Supp. 387 (D. Md. 1967) ............................................................... 8

*Charbonnages De France v. Smith*,
    597 F.2d 406 (4th Cir. 1979) ..................................................................... 8

*Chenette v. Porch.com, Inc.*,
    50 F.4th 1217 (9th Cir. 2022) ................................................................. 18

*Chesapeake Ranch Water Co. v. Bd. of Comm'rs of Calverty Cnty.*,
    401 F.3d 274 (4th Cir. 2005) ................................................................... 23

*Fischman v. MediaStratX, LLC*,
    No. 2:20-CV-83-D, 2021 WL 3559639 (E.D. N.C. Aug. 10, 2021) ......................... 18

*Gaker v. Q3M Ins. Solutions*,
    No. 3:22-CV-00296-RJC-DSC, 2023 WL 2472649 (W.D. N.C. Feb. 28, 2023). 12, 21

*Garland v. Cargill*,
    602 U.S. 406 (2024) ...................................................................... 9, 10, 17

*Gorss Motels, Inc. v. Safemark Systems, LP*,
    931 F.3d 1094 (11th Cir. 2019) ......................................................... 21, 24

*Hand v. Beach Entertainment KC, LLC*,
    456 F. Supp.3d 1099 ............................................................................... 18

*Henson v. Santander Consumer USA, Inc.*,
    582 U.S. 79 (2017) ................................................................................. 17

*Krakauer v. Dish Network, L.L.C.*,
    925 F.3d 643 (4th Cir. 2019) .......................................................................12, 13, 18

*Lirones v. Leaf Home Water Solutions, LLC*,
    2024 WL 4198134 (N.D. Ohio Aug. 9, 2024) ..................................................... 18, 20

*Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) .................................... 9, 16

*Lyman v. QuinStreet, Inc.*,
    2024 WL 3406992 (N.D. Cal. July 12, 2024).................................................... 18, 20

*McLaughlin Chiropractic Assoc. v. McKesson Corp.*,
    ___ S. Ct. ___, 2024 WL 4394119 (Oct. 4, 2024) .................................................... 24

*Mims v. Arrow Fin. Servs., LLC*,
    565 U.S. 368 (2012).................................................................................. 12

*Newman v. Piggie Park Enters., Inc.*,
    390 U.S. 400 (1968) (per curiam) ................................................................. 23

*Nickson v. Advanced Marketing & Processing, Inc*,
    No. DLB-22-2203, 2023 WL 4932879 (D. Md. Aug. 2, 2023) ................................. 18

*Pariseau v. Built USA, LLC*,
    619 F. Supp. 1203 (M.D. Fla. 2022) .............................................................. 18

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*,
    139 S. Ct. 2051 (2019) ...................................................................21, 22, 23

*Salcedo v. Hanna*,
    936 F.3d 1162 (11th Cir. 2019) ................................................................. 12

*Sorrells v. United States*,
    287 U.S. 435 (1932)................................................................................ 23

*Stevens v. Howard D. Johnson Co.*,
    181 F.2d 390 (4th Cir. 1950) ...................................................................... 8

*Tessu v. AdaptHealth, LLC*,
    No. SAG-23-0364, 2023 WL 5337121 (D. Md. Aug. 17, 2023) .............................. 18

*True Health Chiropractic, Inc. v. McKesson Corp., Nos. 22-15710 & 22-15732, 2023*
    WL 7015279 (9th Cir. Oct. 25, 2023) ........................................................... 24

*Tsolumba v. SelectQuote, Inc.*,
   No. 5:22-cv-00712, 2022 WL 614664 (N.D. Ohio Sept. 20, 2023) ......................... 18

*United States v. Stavrakis*,
   No. CR ELH-19-00160, 2020 WL 6946596 (D. Md. Nov. 25, 2020)....................... 11

**Statutes and Code of Federal Regulations**

28 U.S.C. § 2342-2350 ...................................................................................................21, 22

33 U.S.C. § 1369(b)(2) ..........................................................................................................22

42 U.S.C. § 7607(b)(2) ..........................................................................................................22

47 U.S.C. § 227 ............................................................. 10, 11, 12, 13, 15, 16, 19, 20, 22

47 C.F.R. § 64.1200 ...........................................................................13, 14, 15, 16, 19, 24,

**Rules and Other Authorities**

Fed. R. Civ. P. 56(c)................................................................................................................8

Fed. R. Evid. 201 ................................................................................................................. 11

HR Rep No 108-08 ……………………………………………………………………12

FCC Report and Order, CG Docket No. 92-90 (Oct. 16, 1992) ………………...…………13

Telephone Consumer Protection Act of 1991, 57 FR 48333-01 ……………....………...13

FCC Notice of Proposed Rulemaking, CG Docket No. 02-278 (Sept. 16, 2002) ……….14

I*n re Rules and Regs. Implementing the Telephone Consumer Protection Act of 1991*,
   18 F.C.C. Rcd. 14014 (F.C.C. 2003) ………………………………....13, 14, 15, 17

*See* Allison Grande, *High Court's TCPA Grnt Set to Broaden Loper Bright's Blow*,
   Law360 (Oct. 11, 2024) …………………………………...……...………..….23

*In the Matter of Rules & Regulations. Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961 (2015) ……………….………………..……….25

*Targeting and Eliminating Unlawful Text Messages*, CG Docket Nos. 21-402 and 02-278,
   Report and Order and Further Notice of Proposed Rulemaking (2023) ….........25

Defendant Palm Beach Tan, Inc. ("Palm Beach Tan") submits this Brief in support of its Motion for Summary Judgment ("Motion") and respectfully shows as follows:

## I.    SUMMARY OF ARGUMENT

Palm Beach Tan respectfully requests that the Court grant summary judgment in its favor on all claims on either, or both, of these two independent grounds:

**A.  *Statutory text.*** Under the statutory-interpretation principles confirmed by the Supreme Court in *Loper Bright* and *Cargill*, the plain terms of the TCPA control and foreclose Plaintiff's claim. The text of Section 227(c) does not include cellular telephone subscribers (even if they are on a do-not-call registry) and does not apply to text messages sent to cellular telephone subscribers. The Court should give no weight to the FCC's attempt to unilaterally extend its regulatory authority beyond the specific grant from Congress in Section 227(c).

**B.  *Regulatory scope.*** In 2003, the FCC adopted 47 C.F.R. § 1200(e), extending the scope of Section 227(c) of the TCPA to include cellular telephone subscribers. The FCC did not further extend the scope of Section 227(c) to include text messages until March 26, 2024. Therefore, even if the Court did not apply *Loper Bright* and *Cargill* and accorded full weight to FCC regulations, it should hold that Section 227(c) does not apply to the text messages in this case.

## II.     BACKGROUND

Plaintiff Alex Hudson ("Plaintiff") filed this lawsuit against Palm Beach Tan on behalf of himself and a putative class that he purports to represent. He alleges that Palm Beach Tan violated Section 227(c) of the TCPA by sending text messages to cellular telephones. *See, e.g.*, First Am. Compl. at ¶¶ 1, 42-45, 51-53. Hudson does not allege that PBT placed live calls to his cell phone, nor does he allege that PBT utilized an automated telephone dialing system or an artificial or prerecorded voice.

Specifically, Plaintiff argues that Palm Beach Tan violated 47 C.F.R. § 64.1200(c)(2) by sending text messages to cellular telephone numbers allegedly registered on the national do-not-call registry, and 47 C.F.R. § 64.1200(d)(3) by sending text messages to cellular telephone subscribers despite do-not-call requests. *See, e.g.*, *id.* at ¶¶ 11-12, 14, 17, 26, 37-48 (Count I), 49-56 (Count II).

## III.     QUESTIONS PRESENTED

1.     Whether the plain terms of Section 227(c) of the TCPA foreclose the plaintiff's claim in this case.

2.     Whether the FCC's regulations, that purported to expand the scope of Section 227(c) to cell phones, exceeded the authority given to that agency by Congress.

3.     Whether the Hobbs Act bars this Court from independently evaluating the legitimacy of the FCC's regulations about Section 227(c).

4.     Even if full weight is accorded to all FCC regulations, whether Plaintiff's claim based on text messages allegedly sent to his cell phone is still foreclosed.

## IV.  LEGAL STANDARD

A court must grant a motion for summary judgment if the pleadings, depositions, and affidavits submitted show that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c*)*. Summary judgment may be granted on legal issues where no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law. *See Charbonnages De France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950); *Champion Brick Co. of Baltimore Cnty. v. Signode Corp.*, 263 F. Supp. 387, 391 (D. Md. 1967) ("The court may not restrict itself to a consideration of possible factual issues urged by the parties, but instead, it must assure itself that under any applicable theory of law there remains no unresolved material factual issue. Thus, the motion [for summary judgment] is an extremely important device for conservation of judicial time and costs of litigation where it is clear that no claim or defense to a claim exists as a matter of law.").

## V.  ARGUMENT

### A.  The plain terms of the TCPA foreclose Plaintiff's claim.

Plaintiff has no claim because Section 227(c) of the TCPA does not apply to text messages sent to cell phones. And under the statutory-interpretation principles stated by *Loper Bright* and *Cargill*, Plaintiff cannot salvage his claim by citing the FCC's regulations that unilaterally expanded that agency's authority beyond what Congress specifically gave to it.

1. ***Loper Bright*** **and** ***Cargill*** **confirm that statutory text controls.**

Two recent Supreme Court cases confirm that a statute's plain text controls in determining the authority of an administrative agency.

In *Loper Bright Enterprises v. Raimondo*, the Supreme Court overruled "*Chevron* deference," a principle that had required courts to defer to an agency's interpretation of a statute that was ambiguous about that agency's power. 144 S. Ct. 2244, 2263-73 (2024). The Court reminded that Article III judges adjudicate "Cases" and "Controversies," interpreting laws "independent of influence from the political branches." *Id.* at 2257. When the meaning of a statute is at issue, the judicial role is to "interpret the act of Congress, in order to ascertain the rights of the parties," applying all traditional tools of statutory construction to discern Congress's intent. *Id.* at 2257, 2264.

The interpretation of statutory meaning is "exclusively a judicial function," because "supremacy of laws demands that there shall be opportunity to have some court decide whether an erroneous rule of law was applied." *Id.* at 2258-59. Courts, not agencies, are to decide "all relevant questions of law" arising in review of agency action and authority. *Id.* at 2265-66.

The Supreme Court applied these principles in *Garland v. Cargill*, 602 U.S. 406 (2024), which considered the scope of authority delegated to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). The Court held that the National Firearms Act allowed the ATF to regulate a "machinegun," which is a firearm that "a shooter can fire multiple times, or even continuously, by engaging the trigger only once." *Id.* at 411. That

authority did not let the ATF regulate a "semiautomatic" firearm, which requires a trigger pull for each shot, even if that firearm has a "bump stock" that allows rapid trigger pulls and a firing rate similar to a machinegun. *Id.* at 411-12, 422-23. Congress defined the ATF's authority with reference to a specific technical design, and that definition controlled.

These cases are simple and straightforward. An agency has no controlling authority to act unless Congress has specifically authorized the agency to do so in the text of the relevant statute.

### 2. Plaintiff has no claim under Section 227(c) of the TCPA.

Plaintiff's claim is based on Section 227(c) of the TCPA. The TCPA became law in 1991. Section 227(c) was part of the law as enacted in 1991 and has not been amended since then.

In Section 227(c), Congress directed the FCC to "initiate a rulemaking concerning the need to protect *residential telephone subscribers'* privacy rights to avoid receiving *telephone solicitations* to which they object," and, towards that end, make rules about national and company-specific do-not-call registries. 47 U.S.C. § 227(c)(1) (emphasis added). "Telephone solicitation" is defined in Section 227(c) as "the initiation of a *telephone call or message* for the purposes of encouraging the purchase or rental of, or investment in, property, goods, or services" with a person with whom the sender does not have prior express permission or an established business relationship. 47 U.S.C. § 227(a)(4) (emphasis added).

In other words, Congress's 1991 mandate to the FTC in Section 227(c) had two key components. The FTC was to (1) protect "residential telephone subscribers" from (2) "telephone solicitations" made by (3) "initiation of a telephone call or message."

Congress did not give the FCC any leeway to expand its own authority. To the contrary, Section 227(c) told the FCC to come back to Congress and ask for any more regulatory power. *See* 47 U.S.C. § 227(c)(1)(D) (requiring the FTC to "consider whether there is a need for additional Commission authority to further restrict telephone solicitations, including those calls exempted under subsection (a)(3) of this section, and, if such a finding is made and supported by the record, propose specific restrictions **to the Congress**." (emphasis added)).

When Congress gave this mandate to the FCC in 1991, Congress did not intend to regulate text messages sent to cellular phones. Congress's use of the phrase "telephone solicitation" (defined by reference to "a telephone call or message"), coupled with the phrase "residential telephone subscribers," both support that conclusion.

***Telephone call or message.*** The first text message, which said "Merry Christmas," was sent from one Vodafone engineer to another on December 3, 1992.[1] When Congress

---

[1] *E.g.*, *This Day in History: First SMS Text Message is Sent*, https://www.history.com/this-day-in-history/first-sms-text-message-sent) ("On December 3, 1992, the first SMS text message in history is sent: Neil Papworth, a 22-year-old engineer, uses a personal computer to send the text message 'Merry Christmas' via the Vodafone network to the phone of a colleague."); *see also The First Text Message Celebrates 25 Years*, All Things Considered, https://www.npr.org/2017/12/04/568393428/the-first-text-messages-celebrates-25-years (Dec. 4, 2017) (" ("The first text message was transmitted Dec. 3, 1992. Engineer Neil Papworth typed 'merry Christmas' on a computer and sent the first SMS message to the cellphone of Vodafone director Richard Jarvis."). While Defendant cites this information as legislative context of the TCPA, and not an adjudicative fact that is material to this case, the information is beyond dispute, and this Court is free to judicially notice it under Fed. R. Evid. 201. *See* Fed. R. Evid. 201; *United States v. Stavrakis*, No. CR ELH-19-00160, 2020 WL 6946596, at *2 n.7 (D. Md. Nov. 25, 2020) ("The Court takes judicial notice of information in the news.")

enacted the TCPA in 1991, the phrase "telephone call or message" could only have meant a telephone call or recorded voice message (i.e., an answering-machine message). *See* HR Rep No 108-08 (Feb. 11, 2003) ("Under the TCPA (as compared to the FTC act on telemarketing), however, Congress by statute prohibited telemarketers from leaving ***recorded messages***." (emphasis added)).

    ***Residential telephone subscribers.*** The common-sense meaning of "residential telephone subscribers" is persons who have subscribed for a residential telephone. A residential telephone is clearly different from a cell phone. Ample evidence shows that when Congress enacted the TCPA, its goal was to protect *the home* from invasions of privacy.[2] That's why it chose the specific phrase "residential telephone subscribers" for Section 227(c).

    Congress referred to "cellular telephone service" in Section 227(b)'s prohibition of autocalls to a number assigned to a cellular telephone service.[3] Congress was aware of the

---

[2] *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) ("In enacting the TCPA, Congress made several findings relevant here. 'Unrestricted telemarketing,' Congress determined, 'can be an intrusive invasion of privacy.' In particular, Congress reported, '[m]any consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls ***to their homes***.'" (citations omitted, bracketing in original, emphasis added)); *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019) ("As Congress explained, the [TCPA] was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls ***to their homes*** from telemarketers ....'" (citations omitted, emphasis added)); *see also Gaker v. Q3M Ins. Solutions*, No. 3:22-CV-00296-RJC-DSC, 2023 WL 2472649, at *3 (W.D. N.C. Feb. 28, 2023) ("Cell phones do not present the same concerns as residential telephones .... '[T]he findings in the TCPA show a concern for privacy within the sanctity of the home ... cell phones are often taken outside of the home and often have their ringers silenced, presenting less potential for nuisance and home intrusion.' Cell phones' mobility and functionality to silence or decline calls alleviate the concerns inherent with a home telephone." (quoting *Salcedo v. Hanna*, 936 F.3d 1162, 1168-69 (11th Cir. 2019)) (citations omitted)).

[3] *See* 47 U.S.C. § 227(b)(1)(A)(3) (barring various kinds of robocalls for which the recipient is charged money to receive); 47 U.S.C. § 227(b)(2)(C) (giving the FCC discretion to exempt calls that are not accompanied by a charge); 47 U.S.C. § 227(b)(2)(H) (stating that the FTC "may restrict or limit the number and duration of calls made to a telephone number assigned to a cellular telephone service to collect a debt owed to or guaranteed by the United States").

---

existence of cell phones and the difference between cell phones and residential phones, but chose to make no reference to cellular telephone service in Section 227(c). In drafting the TCPA, Congress struck a complex balance among "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms." *Krakauer*, 925 F.3d at 648, and Congress's decision to not say "cellular telephone service" in Section 227(c) shows its intent to not include cell phones within the meaning of "residential telephone subscribers."

After enactment of the TCPA in 1991, the FTC's first regulations about it were consistent with the statute's plain terms. Pursuant to Section 227(c), the FCC adopted regulations in 1992 to establish company-specific do-not-call registries. 47 C.F.R. § 64.1200(d). (The FCC declined to establish a national do-not-call registry at that time, concluding that it would be too difficult to create and administer such a registry.[4]) Under the 1992 regulations, a call by a "person or entity," made for "telemarketing purposes" to "residential telephone subscribers," was prohibited if the subscribers had placed their telephone numbers on that company's do-not-call list. This regulation nowhere mentions cell phones or text messages to cell phones.[5]

Moreover, in a notice of proposed rulemaking in 2002, the FCC acknowledged that a proposed rule would "allow some business and *wireless telephone subscribers* to register on the national database." That was problematic, noted the FCC, because the TCPA "only

---

[4] Paragraph 14, FCC Report and Order, CG Docket No. 92-90 (Oct. 16, 1992).
[5] *See* Telephone Consumer Protection Act of 1991, 57 FR 48333-01.

grants authority to the Commission to establish a national database for residential subscribers."[6]

The plain text of Section 227(c) does not give the FCC the authority to regulate text messages to cell phones.

### 3. The FCC's extension of the scope of Section 227(c) to cell phones was not authorized by Congress.

In July 2003, the FCC released FCC 03-153 (the "2003 Order"),[7] approving the national-do-not call registry and adopting a rule that prohibited telephone solicitations to "[a]ny ***residential telephone subscriber*** who has registered his or her telephone number on the national do-not-call registry). 47 C.F.R. § 64.1200(c) (emphasis added). So far, so good.

But the FCC then went on to adopt a rule that extended the scope of the TCPA to cellular telephones, stating: "The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to ***wireless telephone numbers***…." 47 C.F.R. § 1200(e). At the same time, the FCC permitted cell phone numbers to be listed on the national do-not-call registry [Paragraph 33 of the 2003 Order] in violation of Section 227(c)'s limitation of the registry to telephone numbers of residential subscribers, and created a presumption that "wireless subscribers who ask to be put on the national do-not-call list [are] 'residential subscribers'," subject to "a

---

[6] Paragraph 57, FCC Notice of Proposed Rulemaking, CG Docket No. 02-278 (Sept. 16, 2002).
[7] *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, (F.C.C. 2003) (hereinafter, "2003 Order").

complaining wireless subscriber [providing] further proof of the validity of that presumption" in an enforcement action or lawsuit.[8]

These regulations were not only ***not*** authorized by Congress, they violated the directive of Congress in Section 227(c)(1)(D) to come back to Congress for more regulatory power if the FCC determined there was "a need for additional Commission authority to further restrict telephone solicitations." See 47 U.S.C. § 227(c)(1)(D).

Notably, even with those additions, the ***only*** mention of text messages or text calls in the 2003 Order appears in its Paragraph 165—in the specific context of "robotexts":

> 165. We affirm that under the TCPA, it is unlawful to make any call using an ***automatic telephone dialing system or an artificial or prerecorded message*** to any wireless telephone number [citing Section 227(b) of the TCPA].. Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the called party is charged." This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service…."[9]

By its terms, Paragraph 165 applies only to texts sent by use of an automatic telephone dialing system—so-called "robotexts." Robotexts are regulated by Section 227(b) of the TCPA, and as noted previously, Plaintiff has made no claim under that statute.

On January 26, 2024, the FCC published a new rule that amended 47 C.F.R. § 64.1200(e) to add "or text messages" after the word "calls" (the "2024 Amendment"). With this amendment, the rules in paragraph 1200(c) (the national do not call registry) and

---

[8] Paragraph 36, 2003 Order
[9] Paragraph 165, 2003 Order (emphasis added).

1200(d) (the company-specific do not call registries) now apply, for the first time, to text messages. 47 C.F.R. § 64.1200(e). The 2024 Amendment of 1200(e) became effective on March 26, 2024.

Under *Loper Bright*, courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority …." 144 S. Ct. at 2273. *Loper Bright* acknowledged that Congress could make a flexible delegation of power to an agency. As examples, the Supreme Court cited the Atomic Energy Act, where Congress referred to "a substantial safety hazard, as defined by regulations which the [Nuclear Regulatory] Commission shall promulgate," and the Clean Air Act, where Congress told the EPA to regulate power plants "if the Administrator finds such regulation is appropriate and necessary." 144 S. Ct. at 2263 & n.5. But in the TCPA, Congress **expressly limited** the FCC's ability to expand its regulatory power, commanding the FCC to return to Congress for any such expansion. 47 U.S.C. § 227(c)(1)(D). Under *Loper Bright*, the plain terms of the TCPA compel the conclusion that the FCC had no authority to expand its power via the 2003 Order or the 2024 regulations.

Additionally, *Cargill* directly rejects the way in which the FCC unilaterally expanded its power. The National Firearms Act defines the ATF's authority by reference to a specific device (an automatic firearm). The TCPA also defines the FCC's authority by reference to a specific device (a residential landline that receives voice communications). In *Cargill*, the ATF argued that technological changes (developments in "bump stock" mechanisms) justified an expansion of its regulatory authority, just as the FCC did in its

2003 and 2024 regulations (developments in cell-phone technology). *Cargill* specifically

rejected that approach:

> Congress **could have linked** the definition of "machinegun" to a weapon's
> rate of fire, as the dissent would prefer. But, it instead enacted a statute that
> turns on whether a weapon can fire more than one shot "automatically ... by
> a single function of the trigger." [26 U.S.C.] § 5845(b). And, "it is never our
> job to rewrite ... statutory text under the banner of speculation about what
> Congress might have done."

602 U.S. at 428 (quoting *Henson v. Santander Consumer USA, Inc.*, 582 U.S. 79, 89 (2017)

(emphasis added)).

The FTC's unilateral expansion of its own power, in both the 2003 Order and 2024

regulations, is directly rejected by *Loper Bright* and *Cargill*.

### 4. After *Loper Bright* and *Cargill*, pre-2024 cases about section 227(c) have low value as precedent.

Most pre-2024 cases accepted the FCC 2003 Order which purported to extend the

scope of Section 227(c) to cell phones, permitted cell phone numbers to be listed on the

national do-not-call registry, created a presumption that wireless subscribers who ask to be

put on the national do-not-call list are "residential subscribers," and provided that such

presumption "may require a complaining wireless subscriber to provide further proof of

the validity of that presumption should we need to take enforcement action." 2003 Order

¶¶ 33-36. This meant that if plaintiffs alleged that they used their cellphones for residential

purposes (or other words to that effect) then these pre-2024 cases denied motions to dismiss

on the ground that such allegations created a question of fact. These cases are not relevant if these provisions of the 2003 Order exceeded the FCC's statutory authority.[10]

Plaintiff has relied on *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019), which affirmed certification of a class alleging TCPA violations based on unwanted telephone calls (not text messages to cell phones). 925 F.3d 643, 654 (4th Cir. 2019). The defendant in that case did not argue that the calls in question were not prohibited by the TCPA because they were made to cell phones, so the *Krakauer* court did not address that issue. The only issue before the court was whether the trial court abused its discretion with an overly broad class definition. The Fourth Circuit made no rulings on the TCPA's coverage of cell phones or text messages to cell phones—much less, apply *Loper Bright* or *Cargill* to the FTC's regulations about those questions.

5. **The handful of cases about section 227(c) decided since *Loper Bright* and *Cargill* do not address all relevant issues.**

To date, Defendant has identified three relevant cases decided since the 2023-24 Supreme Court term: *Cacho v. McCarthy & Kelly LLP*, 2024 WL 3293628 (S.D.N.Y. July 3, 2024); *Lyman v. QuinStreet, Inc.*, 2024 WL 3406992 (N.D. Cal. July 12, 2024); and *Lirones v. Leaf Home Water Solutions, LLC*, 2024 WL 4198134 (N.D. Ohio Aug. 9, 2024).

---

[10] *See, e.g.*, *Chenette v. Porch.com, Inc.*, 50 F.4th 1217, 1224-25 (9th Cir. 2022); *Tsolumba v. SelectQuote, Inc.*, No. 5:22-cv-00712, 2022 WL 614664, *5 (N.D. Ohio Sept. 20, 2023); *Tessu v. AdaptHealth, LLC*, No. SAG-23-0364, 2023 WL 5337121, *4-5 (D. Md. Aug. 17, 2023); *Nickson v. Advanced Marketing & Processing, Inc*, No. DLB-22-2203, 2023 WL 4932879, *6 (D. Md. Aug. 2, 2023); *Pariseau v. Built USA, LLC*, 619 F. Supp. 1203, 1207 (M.D. Fla. 2022); *Barton v. Technical Wellness, LLC*, 525 F. Supp.3d 195, 201-02 (D. Mass. 2021); *Boardman v. Green Dot Corp.*, No. 3:21-CV-00174-FDW-DSC, 2021 WL 3699856, *3 (W.D. N.C. Aug. 19, 2021); *Fischman v. MediaStratX, LLC*, No. 2:20-CV-83-D, 2021 WL 3559639, at *4-5 (E.D. N.C. Aug. 10, 2021); *Hand v. Beach Entertainment KC, LLC*, 456 F. Supp.3d 1099, 1119 *et seq.* (E.D. Mo. 2020).

Those cases should not be followed by this Court because none addressed the application of the TCPA to text messages to a cell phone, none cited Congress's reservation of power in 47 U.S.C. § 227(c)(1)(D), and none considered *Cargill*, which is a material part of the Supreme Court's administrative-law jurisprudence today.

The opinions have other, case-specific issues. The holding of *Cacho* (and thus, the relevant part for precedential purposes) was a straightforward dismissal of a *pro se* pleading that did not allege that the defendant made the offending calls. 2024 WL 3293628 at *13-18. In addition to that case-dispositive holding, *Cacho* expressed concern about "the disruption that the Supreme Court's recent decision in *Loper Bright* portends," and wrote at length about the "more than two decades" that the 2003 Order had been in place. *Id.* at *6 & n.6.

This discussion simply missed the first requirement of *Loper Bright* (and *Cargill*), which is to determine whether the FCC acted within its statutory authority in adopting 47 C.F.R. § 1200(e). Without discussing Congress's command to the FCC to return for any additional authority in 47 U.S.C. § 227(c)(1)(D), *Cacho* developed a complex argument that Section 227(b) referred to types of communication (*e.g.*, "telephone line") while Section 227(c) refers to a location. See 2024 WL 3293628 at *7-8. That distinction oversimplifies those precise and detailed statutes. Section 227(b), in its regulation of robocalling, makes several references to locations to define where such calls are

prohibited.[11] And 47 U.S.C. § 227(c)(2) tells the FCC to consider a wide range of technologies in developing rules for do-not-call lists. Both of those statutes talk about technology and location; the material difference is that Congress included "cellular telephone service" in Section 227(b) but not Section 227(c).

*Lyman* examined the issue of Congressional authorization, but incorrectly held that in Section 227(c), "Congress has expressly conferred discretionary authority on the agency to flesh out the TCPA." 2024 WL 3406992, at *4. As shown above, the TCPA does not do so, and in fact expressly does the opposite by requiring the FCC to return to Congress to seek any expansion of its authority. This error led the court to erroneously conclude that the FCC had authority to extend Section 227(c) to cell phones and create a presumption that cell phones were residential phones. *Id.*

*Lirones* quoted *Lyman* to similarly (and incorrectly) hold that "Congress expressly conferred discretionary authority on the FCC to flesh out the TCPA." 2024 WL 4198134, at *7.

Therefore, in addition to the general problems with these cases identified above (*i.e.*, that none discuss text messages, *Cargill*, or Congress's express command that the FTC return for more legal authority), Defendant also submits that: (1) the actual holding of *Cacho* is irrelevant to this case; (2) the dicta in *Cacho* should not have been used as

---

[11] *See* 47 U.S.C. § 227(b)(1)(A)(3) (barring various kinds of robocalls for which the recipient is charged money to receive); 47 U.S.C. § 227(b)(2)(C) (giving the FCC discretion to exempt calls that are not accompanied by a charge); 47 U.S.C. § 227(b)(2)(H) (stating that the FTC "may restrict or limit the number and duration of calls made to a telephone number assigned to a cellular telephone service to collect a debt owed to or guaranteed by the United States").

authority in *Lirones*; (3) both Lyman and *Lirones* incorrectly conclude that Section 227(c) gave the FCC "discretionary authority."

*Gaker v. Q3M Insurance Solutions*, while decided a year before *Loper Bright* and *Cargill*, and also not addressing *Cargill* or text messages, is more consistent with the present state of the law than the foregoing three cases. It correctly applies statutory text with minimal discussion of other, extraneous matters. 2023 WL 2472649, at *3.

6.  **The Hobbs Act does not bar this Court from independently evaluating the authority cited in a lawsuit between private litigants.**

The Hobbs Act, 28 U.S.C. § 2342, grants the courts of appeals exclusive jurisdiction to "enjoin, set aside, suspend (in whole or in part), or to determine the validity of" certain final orders of administrative agencies, including orders of the FCC. The Act does not bar federal district courts from independently deciding the weight to give an agency rule that exceeds the jurisdiction given to that agency by Congress via statute. Such a rule is not entitled to deference or binding effect, and district courts have the duty and the power to interpret and apply the statutes governing such rules in the cases that come before them for decision.

Judge Pryor's concurrence in *Gorss Motels, Inc. v. Safemark Systems, LP*, 931 F.3d 1094 (11th Cir. 2019), and Justice Kavanaugh's concurrence in *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc*., 139 S. Ct. 2051 (2019), provide three persuasive reasons why the Hobbs Act does not bar district courts from independently deciding the weight to give an agency rule that exceeds the agency's statutory authority.

***Text and structure.*** The text and structure of the Hobbs Act show that its grant of exclusive jurisdiction refers only to direct review of agency orders by petitions for review, *see* 28 U.S.C. § 2342, not to any other proceedings in which an agency order may be relevant.

Specifically, the Act establishes comprehensive procedures for the exercise of that jurisdiction, such as the filing, service, consolidation, and disposition of petitions for review. *See* 28 U.S.C. §§ 2343-2350. It does not address or affect the jurisdiction of district courts over cases within their ordinary jurisdiction, such as civil enforcement actions under the TCPA, 47 U.S.C. § 227. Nor does the Act expressly bar judicial review of agency interpretations of statutes in subsequent enforcement actions, unlike other statutes that provide for direct review of agency actions, such as the Clean Water Act, 33 U.S.C. § 1369(b)(2), or the Clean Air Act, 42 U.S.C. § 7607(b)(2). *See PDR Network*, 139 S. Ct. at 206 (Kavanaugh, J., concurring).

***Purpose.*** The recognized purpose of the Hobbs Act is to provide a prompt and uniform mechanism for facial, pre-enforcement challenges to agency orders. It avoids the delays and uncertainty of multiple pre-enforcement proceedings in multiple courts. *See id.* at 2060. However, the Act does not foreclose the possibility of challenges to agency orders in as-applied enforcement actions (such as *Loper Bright* itself). *See id.* at 2061. Nor does the Act require potential parties to see the future and bring pre-enforcement challenges to every agency order that could affect them someday, regardless of their knowledge, interest, or resources. *See id.* at 2062. Such a requirement would be unfair and impractical, and a

statute must be construed to avoid this sort of unreasonable burden. *See Sorrells v. United States*, 287 U.S. 435, 450 (1932); *Chesapeake Ranch Water Co. v. Bd. of Comm'rs of Calverty Cnty.,* 401 F.3d 274, 280 (4th Cir. 2005).

*Customary practice.* General principles of administrative law and statutory interpretation support a default rule that allows judicial review of agency interpretations unless Congress expressly provides otherwise. *See PDR Network*, 139 S. Ct. at 2060. A contrary rule raises significant questions about due process and separation of powers. *See id.* at 2057, 2062 (Thomas, J., concurring); *id.* at 2062-66 (Kavanaugh, J., concurring in the judgment).

That's particularly true where the plaintiff who brings a statutory claim, such as the TCPA claim in this case, is acting as a "private attorney general" who enforces a public right created by Congress. *See, e.g.*, *Newman v. Piggie Park Enters., Inc*., 390 U.S. 400, 401-02 (1968) (per curiam). But a private attorney general is not entitled to any special deference or presumption based on agency interpretation or application of a statute. *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not."). The text governs the acts of a private attorney general just as completely as it governs those of the actual Attorney General.

"The Hobbs Act, correctly construed, does not require district courts adjudicating cases within their ordinary jurisdiction to treat agency orders that interpret federal statutes as binding precedent." *Gorss Motels*, 931 F.3d at 1106 (11th Cir. 2019) (Pryor, J.,

concurring).[12]  Such a rule is not entitled to deference or binding effect, and district courts have the duty and the power to interpret and apply the governing statutes in cases within their jurisdiction.

**B.     Even if accorded full weight, the FCC's regulations do not prohibit the text messages Plaintiff alleges in this case.**

In 2003, the FCC adopted 47 C.F.R. § 1200(e), extending the scope of Section 227(c) of the TCPA to include cellular telephone subscribers. The FCC did not extend the scope of Section 227(c) to include text messages until March 26, 2024. Therefore, even if the Court did not apply *Loper Bright* and *Cargill* and accorded full weight to FCC regulations, it should hold that Section 227(c) does not apply to the text messages in this case.

There is no dispute that the plain text of Section 227(c) doesn't refer to text messages, and that the 2003 Order refers to them only in the context of Section 227(b)—a separate statute, with its own cause of action, that is not involved in this case. The only question, then, is the effect of the 2024 Amendment.

In a previous ruling, the Court held that prior FCC guidance and the case of *Reimer v. Kohl's, Inc*. stand for the proposition that the 2024 Amendment of 1200(e) was a mere

---

[12] The Supreme Court has recently granted certiorari in *McLaughlin Chiropractic Assoc. v. McKesson Corp*., ___ S. Ct. ___, 2024 WL 4394119 (Oct. 4, 2024) addressing *True Health Chiropractic, Inc. v. McKesson Corp*., Nos. 22-15710 & 22-15732, 2023 WL 7015279 (9th Cir. Oct. 25, 2023), a case addressing the Hobbs Act and a putative TCPA class action. *See* Allison Grande, *High Court's TCPA Grnt Set to Broaden Loper Bright's Blow*, Law360 (Oct. 11, 2024).

formalization of pre-existing rules. For at least two reasons, that conclusion is appropriately reconsidered with this Motion:

As for prior FCC guidance, the Court cited Paragraph 107 of an FCC "Declaratory Ruling and Order" dated July 10, 2015,[13] which says that "the Commission in 2003 determined that the TCPA applies to SMS texts," and cites Paragraph 165 of the 2003 Order as authority for that statement. As shown above, Paragraph 165 does not say that "the TCPA applies to SMS texts." It says only that Section 227(b) of the TCPA applies to texts sent by autodialer (so-called robotexts). The FCC's statement in that 2015 ruling is incorrect and should not be treated as authoritative.

Similarly, the *Reimer* case cites as its authority the FCC's general statement, in Paragraph 55 of the FCC's Report and Order and Further Notice of Proposed Rulemaking dated March 17, 2023[14] ("**2023 NPRM**"), that "text messages are calls for TCPA purposes." Here again, the cited authority for that statement is Paragraph 165 of the 2003 Order, which does not say that. Because that FCC statement is also incorrect, it should not be treated as authoritative either.

Even the FCC acknowledges in the 2023 NPRM that, prior to the 2024 Amendment, the regulations "have never stated that text messages are subject to DNC protections." 2023 NPRM at ¶ 57. The 2024 Amendment did not become effective until after the events giving

---

[13] *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015).
[14] *Targeting and Eliminating Unlawful Text Messages*, CG Docket Nos. 21-402 and 02-278, Report and Order and Further Notice of Proposed Rulemaking, paras 57-59 (2023) (hereinafter, "**2023 NPRM**").

rise to Plaintiff's claim, and cannot now be read to retroactively change the law in Plaintiff's favor.

## VI. CONCLUSION

This case may have far-reaching effect if the Court, as requested by Defendant, grants this Motion. Pending Section 227(c) cases that involve cell phones or text messages to cell phones, that have survived dispositive motions because of the FCC's unauthorized creation of a presumption that a cell phone is a residential phone will be dismissed if they follow this Court, clearing courts of meritless cases. However, the Court need not be concerned that granting this Motion will require, as asserted by the court in *Cacho*, the existing national and company-specific do-not-call registries (which contain unsegregated cell phone and home phone numbers) to jettison their existing databases, get the public to re-register and start all over again. The *Cacho* court was apparently unaware that current technology permits easy determination of whether any given number is a cell phone number or a home phone number (see, e.g., www.phonevalidator.com).

For the reasons set forth above, Palm Beach Tan respectfully requests that the Court grant summary judgment in favor of Palm Beach Tan on all claims asserted against it in this action, and for all other relief to which it may be entitled that is consistent with such ruling.

Dated: October 15, 2024                    *Respectfully submitted,*

/s/ Jared D. Eisenberg
Michael P. Lynn, P.C.
mlynn@lynnllp.com
Texas Bar No. Texas Bar No. 12738500
Jared D. Eisenberg
jeisenberg@lynnllp.com
Texas Bar No. 24092382
Braden L. Dotson
bdotson@lynnllp.com
Texas Bar No. 2410808
LYNN PINKER HURST & SCHWEGMANN LLP
2100 Ross Avenue
Suite 2700
Dallas, Texas 75201
Tel. (214) 981-3800
Fax (214 981-3839

/s/ D.J. O'Brien III
D.J. O'Brien III
dobrien@brookspierce.com
N.C. State Bar No. 35481
William A. Robertson
wrobertson@brookspierce.com
N.C. State Bar No. 53589
BROOKS, PIERCE, MCLENDON,
HUMPHREY & LEONARD, LLP
2300 Renaissance Plaza
230 North Elm Street
Greensboro, NC 27401
Tel. (336) 373-8850
Fax (336) 378-1001

*Counsel for Defendant Palm Beach Tan, Inc.*

## CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that the foregoing document complies with the standards set out in LR 7.3 and LR 56.1 and contains less than 6,250 words excluding portions exempt by the rules.


/s/ Jared D. Eisenberg
Jared D. Eisenberg